1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LAWRENCE GEORGE HASH,                    No.  2:20-cv-1272 TLN AC P

12                    Plaintiff,

13        v.                                   ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14    T. RALLOS, et al.,

15                    Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.

19        I.      Procedural History

20            In screening the complaint, the undersigned recommended that the claims against

21    defendants Rallos, Phile,[1] Allen, and Zamora in Claim One be severed from the original case and

22    opened as a separate civil action.  ECF No. 3 at 15.  Those findings and recommendations were

23    adopted by the district judge, resulting in the opening of this action.  ECF No. 4.  After

24    defendants waived service, they filed a motion to dismiss (ECF No. 15) and a motion to revoke

25    plaintiff's in forma pauperis status and dismiss the complaint (ECF No. 16).  Plaintiff opposes

26    both motions.  ECF Nos. 21, 22.

27    _____

28    [1]  Defendant Phile was identified in the complaint as "Pfile."  The Clerk of the Court will be
      directed to update the docket to reflect defendant Phile's true name.

                                            1

1    II.      Motion to Revoke Plaintiff's In Forma Pauperis Status

2            Defendants argue that plaintiff has accrued at least three strikes, has not alleged that he

3    was in imminent danger at the time the complaint was filed, and is therefore barred from

4    proceeding with this case until he pays the filing fee in full.  ECF No. 16 at 4-8.  They also argue

5    that plaintiff is not indigent, has intentionally concealed significant funds, and should be subject

6    to terminating sanctions.  Id.  at 8-10.

7            In opposition, plaintiff argues that the cases identified by defendants do not constitute

8    strikes and that the cases dismissed after the filing of this action cannot count as strikes with

9    respect to this action.  ECF No. 22 at 7-14.  He also argues that the motion should be denied

10   because he has not misrepresented his financial status as he has no idea whether any funds remain

11   in his trust, and even if they do, he does not have access to them.  Id. at 14-25.

12           A.      The Prison Litigation Reform Act's Three Strikes Rule

13           The Prison Litigation Reform Act of 1995 (PLRA) permits any court of the United States

14   to authorize the commencement and prosecution of any suit without prepayment of fees by a

15   person who submits an affidavit indicating that the person is unable to pay such fees.  However,

16              [i]n no event shall a prisoner bring a civil action or appeal a judgment
                in a civil action or proceeding under this section if the prisoner has,
17              on 3 or more prior occasions, while incarcerated or detained in any
                facility, brought an action or appeal in a court of the United States
18              that was dismissed on the grounds that it is frivolous, malicious, or
                fails to state a claim upon which relief may be granted, unless the
19              prisoner is under imminent danger of serious physical injury.

20   28 U.S.C. § 1915(g).  The plain language of the statute makes clear that a prisoner is precluded

21   from bringing a civil action or an appeal in forma pauperis if the prisoner has brought three

22   frivolous actions and/or appeals (or any combination thereof totaling three).  Rodriguez v. Cook,

23   169 F.3d 1176, 1178 (9th Cir. 1999).  "[Section] 1915(g) should be used to deny a prisoner's IFP

24   status only when, after careful evaluation of the order dismissing an action, and other relevant

25   information, the district court determines that the action was dismissed because it was frivolous,

26   malicious or failed to state a claim."  Andrews v. King (King), 398 F.3d 1113, 1121 (9th Cir.

27   2005).

28   ////

2

Once a plaintiff has accrued three strikes, he is precluded from proceeding IFP unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  To satisfy the exception, plaintiff must have alleged facts that demonstrate that he was "under imminent danger of serious physical injury" at the time of filing the complaint.  Andrews v. Cervantes (Cervantes), 493 F.3d 1047, 1053 (9th Cir. 2007) ("[I]t is the circumstances at the time of the filing of the complaint that matters for purposes of the 'imminent danger' exception to § 1915(g).").

B.      Plaintiff's Strikes

Defendants have identified the following six cases which they argue resulted in dismissals that constitute strikes within the meaning of § 1915(g): (1) Hash v. Thornberry, 3:05-cv-2438 MMC (N.D. Cal.), dismissed October 18, 2005; (2) Hash v. Hinkle, 05-cv-2291 MMC (N.D. Cal.), dismissed October 14, 2005; (3) Hash v. Giacomazzi, 20-cv-1116 EJD (N.D. Cal.), dismissed July 17, 2020; (4) Hash v. Williams, 10-cv-1796 MMC (N.D. Cal.), dismissed June 15, 2010; (5) Hash v. Santoro, 19-cv-0783 YGR (N.D. Cal.), dismissed March 3, 2020; and (6) Hash v. Santoro, 19-cv-0784 YGR (N.D. Cal.), dismissed May 29, 2020.  ECF No. 16 at 5-6; ECF No. 18.  The court will take judicial notice of these cases.  See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citations omitted)); Fed. R. Evid. 201(b)(2) (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

As an initial matter, the order provided by defendants in Hash v. Giacomazzi, 5:20-cv-1116 EJD (N.D. Cal.), reflects that the complaint was dismissed in part without prejudice to filing as a habeas action and the remainder of the complaint was dismissed with leave to amend.  ECF No. 18 at 14-21.  This does not meet defendants' burden of "produc[ing] court records or other documentation that will allow the district court to determine that a prior *case* was dismissed because it was 'frivolous, malicious or fail[ed] to state a claim,'" King, 398 F.3d at 1120 (second alteration in original) (emphasis added) (quoting 28 U.S.C. § 1915(g)), and a review of the docket in that case reveals that it is in fact still ongoing.  Additionally, as plaintiff points out, Hash v.

1   Giacomazzi was not even filed until after plaintiff initiated the instant case.[2]

2            Section 1915(g) prohibits *in forma pauperis* claims brought by
            prisoners who have, while incarcerated, on "3 or more *prior*
3            occasions" had claims dismissed due to their frivolity, maliciousness,
            or failure to state a claim. 28 U.S.C. § 1915(g) (emphasis added).
4            This language makes clear its application to claims dismissed prior
            to the current proceedings.
5

6   Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir. 1997); see also Silva v. Di Vittorio, 658 F.3d

7   1090, 1100 (9th Cir. 2011) (strike incurred after initiation of current proceedings did not take

8   place on a "prior occasion" and therefore did not count as a strike for purposes of those

9   proceedings), overruled on other grounds by Coleman v. Tollefson, 575 U.S. 532, 237 (2015)

10  (holding that "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the

11  dismissal is the subject of an appeal.").  Accordingly, any dismissal in Hash v. Giacomazzi, as

12  well as the dismissals in Hash v. Santoro, 4:19-cv-0783 YGR (N.D. Cal.), and Hash v. Santoro,

13  4:19-cv-0784 YGR (N.D. Cal.), which were also initiated after this action, cannot serve as strikes

14  to bar plaintiff from proceeding in forma pauperis in this case.

15           In their reply, defendants argue that Silva, supra, does not "bar a defendant from seeking

16  to revoke a plaintiff's in forma pauperis status based upon subsequent events" and instead held

17  only that a strike cannot be considered until any appeals were exhausted."  ECF No. 25 at 10.

18  However, Silva explicitly found with respect to one of the alleged strikes that "[t]he district

19  court's order of dismissal . . . was dated January 29, 2009—over nine months after Silva filed his

20  notice of appeal in this case.  Thus, this dismissal did not take place on a '*prior occasion*' and

21  cannot count against him here."  Silva, 658 F.3d at 1100 (emphasis added).  Furthermore, the

22  plain language of the statute is clear, and defendants present no authority holding that strikes

23  accrued after the initiation of a case can bar in forma pauperis status in that case.

24           Upon review of the remaining three cases relied upon by defendants, the court finds that

25  defendants have not shown that plaintiff has accrued three strikes because the last remaining case

26  ―――――――――――――――――
27  [2]  Although this case was not docketed by the Clerk of the Court until June 25, 2020, because the
    claims were severed from another action, the complaint retained its original filing date and was
    deemed filed as of August 11, 2017, subject to adjustment pursuant to the prison mailbox rule.
28  ECF No. 4 at 3.

1  they rely upon, Hash v. Williams, 3:10-cv-1796 MMC (N.D. Cal.), does not meet the criteria for

2  being counted as a strike.  In Hash v. Williams, the district court dismissed the action because

3  plaintiff failed to pay the filing fee or complete an application to proceed in forma pauperis,

4  despite being notified of the deficiency.  ECF No. 18 at 23-24.  This dismissal does not fall within

5  the statutorily defined grounds of "frivolous, malicious, or fails to state a claim upon which relief

6  may be granted."  Although defendants argue that "[t]he failure to cure a defect associated with

7  an in forma pauperis application can constitute a strike," ECF No. 25 at 8, the case they rely upon

8  for this proposition, Ortiz v. Cox, 759 F. Supp. 2d 1258 (D. Nev. 2011), is neither controlling nor

9  persuasive.

10      In Ortiz, the court considered an action in which plaintiff had filed two appeals in the

11  Ninth Circuit.  Id. 759 F. Supp. 2d at 1262.  The district court certified that the first appeal was

12  not taken in good faith, and the plaintiff filed an appeal of that order.  Id.  Both appeals were

13  dismissed for failure to perfect the appeals.  Id.  The court in Ortiz held that "Plaintiff's failure to

14  perfect either appeal, combined with other circumstances, warrants the imposition of at least one

15  strike in relation to these appeals."  Id.  Even assuming that the court in Ortiz properly found that

16  the plaintiff had incurred a strike based on his appeals, there is no evidence of similar conduct or

17  "other circumstances" here.

18      Defendants also cite Tierney v. Atkin, No. 13-cv-0136 SOM/RLP, 2013 WL 1991907,

19  2013 U.S. Dist. LEXIS 67713 (D. Haw. May 13, 2013), and argue that the court in that case

20  "similarly advised a prisoner's failure to file an amended complaint correcting the deficiencies

21  identified in the dismissal order may result in the order counting as a strike for purposes of 28

22  U.S.C. § 1915(g)."  ECF No. 25 at 9.  In Tierney, the court dismissed the complaint for failure to

23  state a claim and gave plaintiff leave to amend.  2013 WL 1991907, at *5, 2013 U.S. Dist. LEXIS

24  67713, at *12.  Failing to file an amended complaint after the previous complaint was dismissed

25  for failure to state a claim is not the same as or analogous to failing to pay the filing fee or file an

26  application to proceed in forma pauperis.

27      This court cannot find that the mere failure to pay the filing fee or submit an application to

28  proceed in forma pauperis falls within the definition of a strike.  Even assuming that the other two

5

cases identified by defendants count as strikes, plaintiff is not disqualified from in forma pauperis status here.  Because defendants have not identified at least three prior dismissals that counts as strikes, the motion to revoke plaintiff's in forma pauperis status should be denied.

        C.     Plaintiff's Indigency

        Defendants argue in the alternative that plaintiff is not indigent and has deliberately concealed the fact that he is the beneficiary of a trust.  ECF No. 16 at 8-10.  They assert that the California Third District Court of Appeal's decision in Hash v. Hash, No. C068869, 2012 WL 5449627, 2012 Cal. App. Unpub. LEXIS 8188 (Cal. App. Nov. 8, 2012), establishes that plaintiff is the beneficiary of a trust; he is able to obtain funds from the trust to pay the filing fees in this case; he has received funds from the trust to pay for various expenses, including paying for packages and investigative costs related to his criminal case; that he has avoided having the trust proceeds placed in his prison account to prevent them from being used to satisfy his obligations; and that in 2009 the trust had a balance of $69,697.05 and was earning 0.90% interest.  Id. at 8-9.  They further argue that plaintiff has demonstrated bad faith because he has failed to disclose the existence of the trust, the amount of the trust, and that he has received funds from the trust in his application to proceed in forma pauperis in this action and others, including applications made at or near the time he was litigating Hash v. Hash, and that he has attempted to conceal the funds by keeping them out of his prison trust account.  Id. at 10.

        In opposition, plaintiff argues that he is indeed indigent and his representations that he has no funds were made in good faith.  ECF No. 22 at 14-25.  Plaintiff claims that his "alleged trust (and the funds in it) may or may not actually exist" and that even if it does exist, he does not have access to the funds because his brother, the trustee, has told him that he will not give plaintiff any money and plaintiff does not have any other way to access what money may remain in the trust.  Id. at 16, 22-24.  In his declaration, plaintiff avers that according to a friend, his brother said the trust's funds were nearly exhausted; he believes his brother may have appropriated the funds for his own use; it has been around ten years since the last time he received any funds from the trust; and the last time his brother responded to one of his letters was in 2016, and the "response said something to the effect of, "I'm tired of your 'shit', don't ask for anything ever again because you

1   won't get anything or any money from me ever, so don't ask!"  Id. at 19-20, 22-23.

2          Under 28 U.S.C. § 1915, federal courts may authorize the commencement and prosecution

3   of a civil suit without prepayment of fees if the plaintiff demonstrates by affidavit that he is

4   unable to pay the fees.  28 U.S.C. § 1915(a)(1).  However, "the court shall dismiss the case at any

5   time if the court determines that . . . the allegation of poverty is untrue."  28 U.S.C.

6   § 1915(e)(2)(A).  "To dismiss [a] complaint pursuant to § 1915(e)(2), a showing of bad faith is

7   required, not merely inaccuracy."  Escobedo v. Applebees, 787 F.3d 1226, 1234 n.8 (9th Cir.

8   2015).

9          The court finds that defendants have failed to establish that plaintiff's allegations of

10  poverty were untrue *at the time this action was initiated*.  Even assuming that the trust for which

11  plaintiff is a beneficiary had a balance of $69,697.05 and that plaintiff misrepresented his assets

12  in in forma pauperis applications filed at or around the time of the decision in Hash v. Hash, that

13  decision was rendered in November 2012, nearly five years before the instant action was initiated,

14  and there is no evidence before the court as to what funds, if any, remained in the trust at the time

15  the complaint in this case was filed.  Furthermore, though the evidence indicates that plaintiff has

16  received funds and packages paid for by the trust in the past, those records are from 2010.  See

17  ECF No. 18 at 93, 95-96.  There is no evidence that plaintiff has received any benefit from the

18  trust since that time, which aligns with plaintiff's declaration that it has been approximately a

19  decade since he last received funds from the trust.  There is also no evidence to dispute plaintiff's

20  claim that his brother has not responded to his correspondence since 2016.  Because there is

21  insufficient evidence to demonstrate that plaintiff's allegations of poverty at the time this action

22  was initiated were untrue, the motion to revoke plaintiff's in forma pauperis status and dismiss

23  the case should be denied.[3]

24  ───────────────

25  [3]  Although defendants cite to a number of cases in which plaintiffs had their cases dismissed due
    to untrue allegations of poverty, those cases are distinguishable as they all involved evidence of
26  the plaintiffs' assets *at or immediately preceding the time of filing*.  See Kennedy v. Huibregtse,
    831 F.3d 441, 443-44 (7th Cir. 2016) (plaintiff concealed account containing approximately
27  $1,400 at the time of his in forma pauperis application which he was accessing regularly in the
    weeks and months leading up to filing the application); David v. Wal-Mart Stores, Inc., 669 F.
28  (continued)

1        D.   Conclusion

2            For the reasons set forth above, defendants' motion to revoke plaintiff's in forma pauperis

3    status and dismiss the complaint should be denied.

4        III.    Motion to Dismiss

5            Defendants also move to dismiss plaintiff's complaint on the grounds that it does not state

6    any cognizable claims for relief and is barred by the statute of limitations.  ECF No. 15.  Plaintiff

7    opposes the motion and argues that he has sufficiently pled claims against the defendants and that

8    his complaint was filed within the applicable statute of limitations.  ECF No. 21.

9        A.  Legal Standard for Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

10           Under Rule 12(b)(6), a complaint will be dismissed for failure to state a claim if it makes

11   only "a formulaic recitation of the elements of a cause of action" rather than factual allegations

12   sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550

13   U.S. 544, 555 (2007) (citations omitted).  In order for the claim to be plausible on its face, it must

14   contain sufficient "factual content that allows the court to draw the reasonable inference that the

15   defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

16   (citing Twombly, 550 U.S. at 556).  "Dismissal under Rule 12(b)(6) on the basis of an affirmative

17   defense is proper only if the defendant shows some obvious bar to securing relief on the face of

18   the complaint."  ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014)

19   (citations omitted).

20   _____

21   App'x 793, 793-94 (7th Cir. 2016) (plaintiff had access to and failed to disclose savings account
     with a balance of over $32,000 at the time of the application); Vann v. Comm'r of New York City
22   Dep't of Corr., 496 F. App'x 113, 116 (2d Cir. 2012) (plaintiff intentionally omitted over $2,000
     in deposits he received during twelve-month period preceding the filing of his application);
23   Cuoco v. United States Bureau of Prisons, 328 F. Supp. 2d 463, 467-68 (S.D.N.Y. 2004) (plaintiff
     failed to disclose settlements totaling $13,500 entered into in the weeks before filing application
24   and had money sent to her mother to further "illusion of poverty"); Thomas v. Gen. Motors
     Acceptance Corp., 288 F.3d 305, 306 (7th Cir. 2002) (plaintiff authorized distribution of $73,714
25   from retirement account, minus applicable taxes, nine day before filing application); Witkin v.
     Lee, No. 2:17-cv-0232 JAM EFB, 2020 WL 2512383, at *5, 2020 U.S. Dist. LEXIS 86104, at
26   *13-14 (E.D. Cal. May 15, 2020) (plaintiff received $5,666.09 and settled a case for $1,200 in the
     month before filing application but averred no income from any source in twelve-month period
27   preceding application); Witkin v. Sloan, No. 2:16-cv-2950 JAM EFB, 2019 WL 6918216, at *5,
     2019 U.S. Dist. LEXIS 218427, at *13-14 (E.D. Cal. Dec. 19, 2019) (same).
28

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), and construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).  The court will "presume that general allegations embrace those specific facts that are necessary to support the claim."  Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). However, while pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (citations omitted), the court need not accept legal conclusions "cast in the form of factual allegations," W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted).

### B.  Plaintiff's Allegations

The complaint alleges that defendants Rallos, Phile, Allen, and Zamora violated plaintiff's Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. ECF No. 1 at 8-13.  Specifically, plaintiff alleges that on July 10, 2012, he underwent surgery on his esophagus and stomach, but the procedure was a failure.  Id. at 8.  He was discharged the following day, and the day after that he began throwing up blood and food.  Id.  He subsequently lost twenty-five pounds, had stomach gas, bowel problems, stomach aches, and could not swallow or eat properly.  Id.  On November 13, 2012, plaintiff filed a health care appeal in which he identified all the side effects he was suffering from the surgery and stated that the surgeon who had performed the surgery recommended that the surgery be reversed.  Id. at 9.

On December 11, 2012, Rallos interviewed plaintiff with regard to his health care appeal. Id. at 10.  On January 2, 2013, Phile conducted the second-level review of plaintiff's appeal.  Id. On February 11, 2013, Allen reviewed and approved the second-level response.  Id.  On August 7, 2013, Zamora signed off on the third-level response.  Id.  Plaintiff alleges that his appeal put each of the defendants on notice of his medical condition, that his condition was continuing to decline, and that the longer he went without surgery, the less chance he had of the reversal being successful.  Id. at 11-12.  He also asserts that each defendant had the authority to speed up the

1    process and promptly arrange for him to undergo reversal surgery but failed to do so, causing him

2    to needlessly suffer for over four years until he finally received the necessary surgery on February

3    2, 2017. Id. at 12-13.

4           C.   Request for Judicial Notice

5           Defendants' reply in support of their motion to dismiss is accompanied by a request for

6    judicial notice.  ECF No. 24.  They request that the court take judicial notice of the complaint and

7    first amended complaint that plaintiff filed in Hash v. Kanaan, No. 2:16-cv-1603 EFB (E.D. Cal.).

8           "[A] court may take judicial notice of its own records in other cases."  United States v.

9    Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (citations omitted); Fed. R. Evid. 201(b)(2) (court may

10   take judicial notice of facts that are capable of accurate determination by sources whose accuracy

11   cannot reasonably be questioned).

12                When ruling on a Rule 12(b)(6) motion to dismiss, if a district court
                  considers evidence outside the pleadings, it must normally convert
13                the 12(b)(6) motion into a Rule 56 motion for summary judgment,
                  and it must give the nonmoving party an opportunity to respond.  A
14                court may, however, consider certain materials—documents attached
                  to the complaint, documents incorporated by reference in the
15                complaint, or matters of judicial notice—without converting the
                  motion to dismiss into a motion for summary judgment.
16

17   United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003) (internal citations omitted).

18   However, "[a]s a general rule, a court may not take judicial notice of proceedings or records in

19   another cause so as to supply, without formal introduction of evidence, facts essential to support a

20   contention in a cause then before it."  M/V Am. Queen v. San Diego Marine Constr. Corp., 708

21   F.2d 1483, 1491 (9th Cir. 1983) (citations omitted).

22          The request will be granted to the extent defendants seek judicial notice of the

23   proceedings in Hash v. Kanaan and the general subject matter of the pleadings, in support of their

24   argument that plaintiff is not entitled to equitable tolling because he was previously able to file a

25   complaint regarding the same issues within the statute of limitations.  However, to the extent

26   defendants request the court take notice of the specific facts alleged in the context of whether they

27   contradict the current facts and provide a basis for finding that plaintiff has not stated a claim for

28   deliberate indifference, see ECF No. 23 at 11-12, the request will be denied because it is outside

the proper scope of judicial notice.  Furthermore, even if the pleadings had been filed in the

instant case, they would not be grounds for finding that plaintiff has failed to state a claim for

relief.  See PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, (9th Cir. 2007) ("[T]here is

nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive

pleadings that make inconsistent or even contradictory allegations.").

### D.  Statute of Limitations

#### 1.  Legal Standard

"If the running of the statute is apparent on the face of the complaint, the defense may be

raised by a motion to dismiss."  Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)

(citations omitted).  "When a motion to dismiss is based on the running of the statute of

limitations, it can be granted only if the assertions of the complaint, read with the required

liberality, would not permit the plaintiff to prove that the statute was tolled."  Id. (citation

omitted); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) (citation omitted).

Because § 1983 does not contain its own statute of limitations, the court applies the forum

state's limitations period for personal injury claims.  TwoRivers, 174 F.3d at 991.  In California,

the limitations period is two years.  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing

Cal. Code Civ. Proc. § 335.1).  The court also applies "the forum state's law regarding tolling,

including equitable tolling, except to the extent any of these laws is inconsistent with federal

law."  Id. (citing Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999)).

In California, the limitations period is statutorily tolled for another two years for prisoners

serving less than a life sentence.  Cal. Civ. Proc. Code § 352.1(a); Johnson v. State of California,

207 F.3d 650, 654 (9th Cir. 2000).  Additionally, "the applicable statute of limitations must be

tolled while a prisoner completes the mandatory exhaustion process."  Brown v. Valoff, 422 F.3d

926, 943 (9th Cir. 2005) (citations omitted); Elkins v. Derby, 12 Cal. 3d 410, 414 (1974)

("[W]henever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil

action, the running of the limitations period is tolled during the time consumed by the

administrative proceeding." (citations omitted)).

////

11

"Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim accrues.'" <u>Azer v. Connell</u>, 306 F.3d 930, 936 (quoting <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1153-54 (9th Cir. 2000)). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." <u>TwoRivers</u>, 174 F.3d at 991 (citation omitted).

       2.  <u>Parties' Positions</u>

Defendants argue that plaintiff's cause of action began to accrue, at latest, on November 13, 2012, when he filed his administrative grievance appealing the denial of his surgery; they reason that the cause of plaintiff's injury was the denial of his surgery, not the processing of his grievance. ECF No. 15 at 6-7. Because plaintiff was an inmate imprisoned for less than life, he was entitled to two years of statutory tolling in addition to the two-year statute of limitations. <u>Id.</u> at 7-8. As a result, the statute of limitation expired on November 13, 2016, but plaintiff did not file the complaint in this action until August 11, 2017, making it untimely. <u>Id.</u> at 8.

In opposition, plaintiff argues that his cause of action accrued, at the earliest, on August 7, 2013, when Zamora signed off on the third-level appeal response, because the statute of limitations was tolled while he exhausted his administrative remedies.[4] ECF No. 21 at 10. Plaintiff also argues that his claim did not ripen until the conclusion of his appeal because his surgery was delayed, not denied, so no denial of relief occurred until the appeals process was complete. <u>Id.</u> at 11. Finally, plaintiff asserts that under the prison mailbox rule, his complaint was filed on August 1, 2017, and was therefore filed within the four-year statute of limitations. <u>Id.</u> at 8-10.

In reply, defendants argue that any tolling plaintiff is entitled to for the exhaustion of his administrative remedies took place within the two-year statutory tolling provided by section 352.1(a) of the California Civil Procedure Code. They contend that these periods of tolling run concurrently rather than consecutively, and that plaintiff cannot string together periods of disability to extend the tolling period. ECF No. 23 at 3-7. They also argue that plaintiff is not

---

[4] Plaintiff asserts that he did not receive the response until "much, much later," but does not specify when it was received. ECF No. 21 at 8.

1    entitled to equitable tolling, because the complaint he filed in Hash v. Kanaan, No. 2:16-cv-1603

2    EFB (E.D. Cal.), included the same allegations against defendants and was filed within the

3    applicable statute of limitations. Id. at 6-8.

4              3.  Discussion

5              There are two issues before the court: (1) the date of accrual for plaintiff's claims and (2)

6    whether tolling of the statute of limitations during the exhaustion of administrative remedies runs

7    concurrently or consecutively to statutory tolling for the disability of imprisonment.

8              With respect to the date of accrual, neither party is correct as to the date that plaintiff's

9    claims accrued.  "[A] claim accrues when the plaintiff knows or has reason to know of the injury

10   which is the basis of the action," TwoRivers, 174 F.3d at 991 (citation omitted), and "[l]iability

11   under section 1983 arises only upon a showing of personal participation by the defendant," Taylor

12   v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  Accordingly, plaintiff's claims

13   against the defendants in this action could not have accrued on November 13, 2012, as defendants

14   claim, because at that time none of them had been involved in plaintiff's attempts to obtain

15   treatment.  On the other hand, plaintiff is also incorrect that his claims against all of the

16   defendants did not accrue until he exhausted his administrative grievances.  Rather, plaintiff's

17   claim against each defendant arose when that individual responded to plaintiff's appeal and

18   plaintiff became aware of the response.  Although plaintiff does not specify the dates on which he

19   became aware of each defendants' responses, the information provided in the complaint is

20   sufficient to determine whether plaintiff's claims are timely.

21             Considering plaintiff's claims against defendant Zamora, plaintiff alleges that Zamora

22   signed off on the third-level response on August 7, 2013. ECF No. 1 at 10.  Although defendants

23   argue the complaint in this action was not filed until August 11, 2017, plaintiff correctly points

24   out that he is entitled to the application of the prison mailbox rule since he is a prisoner

25   proceeding pro se.  Under the prison mailbox rule, the complaint is deemed filed on the date

26   plaintiff delivered the document to prison officials for mailing, see Houston v. Lack, 487 U.S.

27   266, 276 (1988), and the envelope the complaint was mailed in indicates that it was handed over

28   to prison officials on August 1, 2017, ECF No. 1 at 93.  Accordingly, the claim against defendant

13

1   Zamora was filed within four years of its accrual, and is therefore timely regardless of whether

2   statutory and equitable tolling run consecutively or concurrently.

3         As for plaintiff's claims against defendants Rallos, Phile, and Allen, plaintiff alleges that

4   Rallos interviewed him on December 11, 2012; Phile conducted the second-level review on

5   January 2, 2013; and Allen reviewed and approved the second-level response on February 11,

6   2013.  ECF No. 1 at 10.  Although the complaint does not specify when plaintiff received the

7   second-level response, he presumably received it sometime shortly after February 11, 2013.[5]

8   With statutory tolling, the statute of limitations therefore expired on or about February 11, 2013,

9   and the claims against Rallos, Phile, and Allen are untimely unless tolling for the period of time

10  he was exhausting the administrative appeals process and the period of statutory tolling run

11  consecutively.

12        There is currently no binding authority on whether equitable tolling while a prisoner

13  pursues administrative remedies runs concurrently or consecutively to the two-year statutory

14  tolling provided based on incarceration, and there is a split among the district courts that have

15  considered the matter.  In Stevenson v. Holland, the court aptly summarized the applicable tolling

16  rules and the rationale behind the opposing positions as follows:

17              After a claim has accrued, California law may operate to toll the
              running of the limitations period.  Such is the case when a plaintiff is
18            incarcerated for a term less than life; California Code of Civil
              Procedure § 352.1 tolls the statute of limitations for up to two years.
19            The tolling ends at the first of (1) release from custody or (2) two
              years of tolling.  Cabrera v. City of Huntington Park, 159 F.3d 374,
20            378-379 (9th Cir. 1998).

21            In addition to the statutory tolling afforded under California law,
              federal courts in California also apply California's equitable tolling
22            rules in Section 1983 actions.  Cervantez v. City of San Diego, 5 F.3d
              1273, 1275 (9th Cir. 1993).  Under California law, "the effect of
23            equitable tolling is that the limitations period stops running during
              the tolling event, and begins to run again only when the tolling event
24            has concluded.  As a consequence, the tolled interval, no matter when
              it took place, is tacked onto the end of the limitations period . . . ."
25            Lantzy v. Centex Homes, 31 Cal.4th 363, 370-371 (2003), modified
              (Aug. 27, 2009).  California's judge-made doctrine of equitable
26

27  [5]  Plaintiff's opposition to the motion to dismiss confirms this, as he states that Zamora took
    approximately six months to respond to his third-level appeal, ECF No. 21 at 15, which would
28  have been submitted after receiving the second-level response.

                                              14

tolling allows tolling of a claim where alternative relief was sought prior to filing suit upon a showing of: (1) "timely notice" of the first claim for relief to the defendants; (2) "lack of prejudice[ ] to the defendant[s]"; and (3) "reasonable and good faith conduct on the part of the plaintiff." <u>McDonald v. Antelope Valley Comm. College Dist.</u>, 45 Cal. 4th 88, 102 (2008); <u>accord Cervantes</u>, 5 F.3d at 1275; <u>Thomas v. Gilliand</u>, 95 Cal. App. 4th 427, 434 (Cal. Ct. App. 2002); <u>see Elkins v. Derby</u>, 12 Cal. 3d 410, 414 (1974) (en banc) (Equitable tolling applies "when an injured person has several legal remedies and, reasonably and in good faith, pursues one.") The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust remedies within the prison grievance system before filing a related Section 1983 action. 42 U.S.C. § 1997e(a). Filing of a prisoner grievance can place the defendants on notice of the claim. Running of the limitations period "must be tolled" during the pendency of the exhaustion process. <u>Brown v. Valoff</u>, 422 F.3d 926, 943 (9th Cir. 2005); <u>Donoghue v. Orange County</u>, 848 F.2d 926, 930-931 (9th Cir. 1988). As a general matter, the applicability of equitable tolling is a fact-specific inquiry, not well suited to resolution on a motion to dismiss. <u>Pesnell v. Arsenault</u>, 543 F.3d 1038, 1042 (9th Cir. 2008).

. . .

Most of the district courts that have permitted equitable tolling in addition to statutory tolling when the tolling events overlap have relied upon language from <u>Lantzy</u>: "[e]quitable tolling under California law operates independently of the literal wording of the [California] Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." <u>E.g.</u>, <u>Carranza v. Lewis</u>, 2017 WL 1050538, *17-18 (N.D. Cal. Mar. 17, 2017); <u>Beard v. Pennington</u>, 2015 WL 7293652, *6-7 (N.D. Cal. Nov. 19, 2015); <u>Burns v. Crook</u>, 2008 WL 5103183, *3 (S.D. Cal. Dec. 3, 2008). Those courts have read California law regarding equitable tolling to require tacking of additional time (beyond the statutory tolling period) to the end of a limitations period when an equitable tolling event occurs during a period of statutory tolling. <u>Carranza</u>, 2017 WL 1050538 at *18 ("[N]o matter when [the equitable tolling event] took place, [the duration of the equitable tolling event] is tacked onto the end of the limitations period."); <u>Akhtar v. Mesa</u>, 2014 WL 1922576, *7-8 (E.D. Cal. May 14, 2014); (applying tolling for the duration of the prison exhaustion process and statutory tolling to a prisoner's claim to extend the limitations period beyond four years); <u>Dawkins v. Woodford</u>, 2012 WL 554371, *5 (S.D. Cal. Feb. 21, 2012) (same); <u>Crayton v. Hedgpeth</u>, 2011 WL 1988450, *9 (E. D Cal. May 20, 2011) (same); <u>Burns</u>, 2008 WL 5103183 at *3 (same); <u>see also</u> <u>Adler</u>, 2013 WL 3481584 at *5 (assuming without deciding that the plaintiff could receive the benefit of equitable and statutory tolling even when the tolling events overlap in time).

The district courts that have declined to apply equitable tolling in addition to statutory tolling when the equitable tolling event overlaps with the period of statutory tolling have relied upon (1) the "common sense" explanation that "when two or more reasons for tolling exist" during the same period that those reasons "will toll concurrently

1  during the time they are both active, and are not tacked
2  consecutively, one upon the other," and (2) <u>Rose v. Petaluma & S.R.
   Ry. Co.</u> for the proposition that separate periods of disability cannot
3  be tacked.  <u>Lopez v. Schwarzenegger</u>, 2012 WL 78377, *5 (E.D. Cal.
   Jan. 10, 2012); <u>accord</u> <u>Oliver v. McDaniel</u>, 2016 WL 4535389, *3
4  (C.D. Cal. June 2, 2016); <u>see also</u> <u>Martin v. Biaggini</u>, 2015 WL
   1399240, *4 (N.D. Cal. Mar. 26, 2015) (identifying that <u>Rose</u> and
5  <u>Lantzy</u> are both inapt analogs but agreeing that overlapping reasons
   for tolling should result in only a single period of tolling).

6  <u>Stevenson</u>, No. 1:16-cv-1831 AWI SKO, 2017 WL 2958731, at *4-6, 2017 U.S. Dist. LEXIS

7  107170, at *13-14 (E.D. Cal. July 11, 2017) (bracketed alterations in original) (footnotes

8  omitted).  The <u>Stevenson</u> court ultimately held that

9  [t]he former camp's reasoning is most consistent with Ninth Circuit
   authority on tolling pending exhaustion of administrative relief.
10  <u>Brown v. Valoff</u>, 422 F.3d at 943 (tolling the limitations period
   during the administrative exhaustion process without regard to
11  statutory tolling); <u>see</u> <u>Elmore v. Arong</u>, 2010 WL 366628, *2 (E.D.
   Cal. Jan. 26, 2010).  Application of statutory and equitable tolling
12  consecutively is also more consistent with the mandate of California
   law to tack time to the end of the limitations period for equitable
13  tolling.  <u>See</u> <u>Lantzy</u>, 31 Cal. 4th at 370-371.

14  <u>Id.</u>, 2017 WL 2958731, at *6, 2017 U.S. Dist. LEXIS 107170, at *14-15.

15       Defendants acknowledge the split among the district courts and urge the court to find the

16  tolling periods run concurrently.  ECF No. 23 at 3-5.  In support of their position, they argue that

17  "California law does not permit distinct disabilities, or periods of disability to be strung together

18  to extend a disability tolling period" and that plaintiff cannot qualify for equitable tolling because

19  he previously initiated an action making the same allegations within the statute of limitations but

20  voluntarily dismissed the defendants from that action.  <u>Id.</u> at 6-8.  The undersigned does not find

21  either of these arguments persuasive.  While California law does not permit distinct disabilities or

22  periods of disability to be strung together, the time during which plaintiff was exhausting his

23  administrative remedies was not a period of disability.  Likewise, while plaintiff is not entitled to

24  equitable tolling for the time he pursued these claims in <u>Kanaan</u>, the undersigned does not find

25  that it bars his entitlement to equitable tolling for the period of time he exhausted his

26  administrative remedies.  <u>See</u> <u>Martell v. Antelope Valley Hosp. Med. Ctr.</u>, 67 Cal. App. 4th 978,

27  985 (1998) (no equitable tolling for claims pursued in the same forum); <u>McDonald v. Antelope</u>

28  <u>Valley Cmty. Coll. Dist.</u>, 45 Cal. 4th 88, 101 (2008) ("Where exhaustion of an administrative

remedy is mandatory prior to filing suit, equitable tolling is automatic." (citation omitted)).

The court finds the reasoning of Stevenson to be persuasive, and therefore finds that plaintiff is entitled to consecutive tolling for the time that he pursued his administrative remedies. Accordingly, the motion to dismiss the complaint as untimely should be denied.

    E.  Failure to State a Claim

       1.  Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05).  A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish a difference of opinion that rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

1    Prison administrators cannot willfully turn a blind eye to constitutional violations being

2    committed by subordinates.  See Jett, 439 F.3d at 1098 (prison administrators "are liable for

3    deliberate indifference when they knowingly fail to respond to an inmate's requests for help"

4    (citations omitted)).  Therefore, an individual who denies an inmate appeal and who had the

5    authority and opportunity to prevent an ongoing constitutional violation could potentially be

6    subject to liability if the individual knew about an existing or impending violation and failed to

7    prevent it.  See id.

8        2.  Parties' Positions

9        Defendants' motion does not dispute that plaintiff has pled sufficient facts to allege a

10   serious medical need.  Instead, defendants argue that plaintiff has failed to state a claim against

11   them because they were not his treating physicians, were involved only through the appeals

12   process,[6] and, with the exception of Rallos, were relying on information provided by others and

13   _____

14   [6] Defendants also argue in both their motion and reply that defendants cannot be held liable for
     denying a grievance because there is no constitutional right to a grievance process.  ECF No. 15

15   at 9-10; ECF No. 23 at 9-11.  However, the cases they rely upon do not support the proposition
     that the denial of a grievance complaining of an ongoing violation cannot state a claim for relief.

16   The cited cases are all inapposite, either because they involved the legal insufficiency of a *due
     process* claim based on the denial of appeals, or were decided on summary judgment, or dealt

17   with the denial of grievances that occurred after the violation complained of was complete.  See
     Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (alleged loss of liberty interest in

18   processing of appeal does not state claim); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)
     (same); George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (denying a grievance does not

19   contribute to completed act of misconduct); Dillingham v. Johnson, No. 13-cv-5777 YGR PR,
     2016 WL 304762, at *9-11, 2016 U.S. Dist. LEXIS 9075, at *21-24 (N.D. Cal. Jan. 26, 2016)

20   (decided on summary judgment); Wright v. Shapirshteyn, No. 1:06-cv-0927 MHM, 2009 WL
     361951, at *3, 2009 U.S. Dist. LEXIS 15655, at *6 (E.D. Cal. Feb. 12, 2009) (due process);

21   Fairley v. Shelton, 664. F. App'x 616, 617 (9th Cir. 2016) (summary judgment); Oliver v.
     McDaniel, No. 14-cv-0334 JVS (PJW), 2016 WL 4535389, at *3-4, 2016 U.S. Dist. LEXIS

22   116683, at *9-10 (C.D. Cal. June 2, 2016) (no right to grievance procedure and no liability for
     denying grievance about completed violation); Hernandez v. Cate, No. 11-cv-0627 R (AJW),

23   2014 WL 6473769, at *5, 2014 U.S. Dist. LEXIS 162332, at *13-14 (C.D. Cal. Oct. 16, 2014)
     (due process); Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (due process and

24   completed violation); McCoy v. Roe, 509 F. App'x 660, 660 (9th Cir. 2013) (due process);
     Shroeder v. Yates, No. 1:09-cv-2236 AWI GBC, 2011 WL 6141060, at *3, 2011 U.S. Dist.

25   LEXIS 142063, at *8-9 (E.D. Cal. Dec. 9, 2011) (due process); Tatmon v. Hartley, No. 1:08-cv-
     0695 BLW MHW, 2011 WL 674043, at *6, 2011 U.S. Dist. LEXIS 15626, at *17-18 (E.D. Cal.

26   Feb. 16, 2011) (summary judgment); Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005)

27   (continued)

28

18

1    did not speak directly to plaintiff.  ECF No. 15 at 9-10.  They further argue that plaintiff has

2    alleged nothing more than a difference of opinion as to his treatment and that he has not alleged

3    that defendants were "involved in any of the discussions with the outside providers, nor does

4    Plaintiff allege that they were assigned to do so."  Id. at 10.  Defendants also argue that because

5    plaintiff has not alleged that a specific doctor had been selected or agreed to perform the surgery,

6    they cannot have been deliberately indifferent because they could not have denied or delayed a

7    surgery no surgeon had been selected to perform.  Id.  Finally, defendants argue that defendant

8    Zamora is not a doctor, cannot engage in the practice of medicine, and therefore cannot have been

9    deliberately indifferent for failing to respond to medical complaints when plaintiff was being

10   treated by a doctor.  Id. at 11.

11          In opposition, plaintiff argues that the complaint sufficiently alleged that he suffered from

12   a serious medical condition and that defendants intentionally delayed and denied his access to

13   prescribed medical care.  ECF No. 21 at 11-19.

14          3.  Discussion

15          Defendants' arguments are unavailing.  Though defendants contend that they cannot be

16   held liable because they were not plaintiff's treating physicians and relied upon information

17   provided by others, it is alleged that defendants were aware that plaintiff had been recommended

18   for surgery and that his condition was deteriorating.  Any determination that defendants' reliance

19   on the opinions of plaintiff's treating physicians absolves them of liability, or that plaintiff's

20   desire for immediate surgery was nothing more than a difference of opinion, requires

21   consideration of evidence outside the complaint and therefore are matters for summary judgment.

22   Moreover, while allegations that a specific doctor had been selected and agreed to perform the

23   surgery would certainly strengthen plaintiff's claims, they are not necessary to state a claim for

24   relief as there is no reason to believe that delays in scheduling can occur only once a surgeon has

25   been selected.

26   _____

27   (summary judgment); McGee v. Adams, 721 F3d 474, 485 (7th Cir. 2013) (summary judgment);
     Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (absent reason to believe prison medical staff

28   are mistreating or not treating a prisoner, non-medical prison officials not liable for deliberate
     indifference).

The complaint alleges that defendants were aware of plaintiff's deteriorating condition; that there was already a doctor's recommendation that the surgery be reversed; that the longer the delay in surgery, the less chance it would be successful; and that that each of the defendants had the authority to expedite the process and promptly schedule his surgery but refused to do so.  The court can infer from the complaint that plaintiff was not seeking approval of surgery, but prompt scheduling of his surgery, which even a non-physician[7] would be able to accomplish, assuming they held a position with the required authority.  Moreover, even if the court were to assume that plaintiff was seeking approval of the surgery, the allegations are sufficient to support the inference that the approval process had stalled or was being unreasonably delayed, and that defendants had the authority to move the process along but refused to do so.  These allegations are sufficient, at the pleading stage, to state a claim for relief.  See Hunt v. Dental Dep't., 865 F.2d 198, 201 (9th Cir. 1989) (defendants who denied grievance requests for prompt treatment of serious condition potentially liable for deliberate indifference).

F.   Conclusion

For the reasons set forth above, defendants' motion to dismiss the complaint as untimely and for failure to state a claim should be denied.

IV.   Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that the motion to revoke your in forma pauperis status be denied because defendants have not shown that you had three cases dismissed for a qualifying reason before you filed the complaint in this case, and because they have not shown that you were untruthful in your in forma pauperis application.

It is being recommended that the motion to dismiss be denied because you filed your complaint within the statute of limitations and the complaint was sufficient to state claims for relief against the defendants.

////

---

[7]  Although defendants assert that Zamora is not a physician, the complaint refers to defendants as "all four doctors."  ECF No. 1 at 17.  Whether Zamora is actually a physician is irrelevant to the sufficiency of the allegations under Rule 12(b)(6).

1

CONCLUSION

2      Accordingly, IT IS HEREBY ORDERED that:

3      1.   Defendants' request for judicial notice (ECF No. 24) is GRANTED in part and

4   DENIED in part as set forth above in Section III.C.

5      2.   The Clerk of the Court is directed to update the docket to reflect that defendant

6   "Pfile's" name is correctly spelled "Phile."

7      IT IS FURTHER RECOMMENDED that:

8      1.   Defendants' motion to revoke plaintiff's in forma pauperis status and dismiss the

9   complaint, ECF No. 16, be DENIED.

10      2.   Defendants' motion to dismiss, ECF No. 15, be DENIED.

11      3.   Defendants be required to file an answer to the complaint within twenty-one days of

12   any order adopting these findings and recommendations.

13      These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18   objections shall be served and filed within fourteen days after service of the objections.  The

19   parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21   DATED: March 29, 2022

22

23   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28